UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EANN C. BEATTY,                                 Case No. 10-12034

          Plaintiff,                          Sean F. Cox
vs.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Michael Hluchaniuk
                                                United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 13)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On May 20, 2010,  plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox

referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of supplemental

security income benefits.  (Dkt. 4).  This matter is before the Court on cross-

motions for summary judgment.  (Dkt. 10, 13).

    B.   Administrative Proceedings

Plaintiff filed an application for supplemental security income (SSI) benefits

on October 14, 1993. (Dkt. 7, Tr. at 113-115). In a decision by the state disability
determination service on February 7, 1994, plaintiff was found disabled and
entitled to SSI as of October 1, 1993. (Dkt. 7, Tr. at 55). On August 20, 2002,
after subsequent continuing disability review, the agency determined that
plaintiff's disability ended on August 1, 2002. (Dkt. 7, Tr. at 69-72). Plaintiff
requested reconsideration of this decision on August 27, 2002. (Dkt. 7, Tr. at 73).
After hearing before a hearing officer, on April 3, 2003, the decision was upheld.
(Dkt. 7, Tr. at 97-102). Plaintiff requested a hearing and on August 8, 2007,
plaintiff appeared without counsel before Administrative Law Judge (ALJ) Henry
Perez, Jr., who considered the case *de novo*. In a decision dated September 22,
2008, the ALJ found that plaintiff was not disabled. (Dkt. 7, Tr. at 14- 26).
Plaintiff requested a review of this decision on October 31, 2008. (Dkt. 7, Tr. at
12-13). The ALJ's decision became the final decision of the Commissioner when,
after the review of additional exhibits[1] (AC-1, Dkt. 7, Tr. at 9), the Appeals

───────────────

[1] In this circuit, where the Appeals Council considers additional evidence
but denies a request to review the ALJ's decision, since it has been held that the
record is closed at the administrative law judge level, those "AC" exhibits
submitted to the Appeals Council are not part of the record for purposes of judicial
review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r
of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court
review of the administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence
presented to the ALJ. In other words, Appeals Council evidence may not be
considered for the purpose of substantial evidence review.

Report and Recommendation
Cross-Motions for Summary Judgment
*Beatty v. Comm'r*; Case No. 10-12034

Council, on May 6, 2010, denied plaintiff's request for review. (Dkt. 7, Tr. 6-8).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.   FACTUAL BACKGROUND

A.   <u>ALJ Findings</u>

Plaintiff was 29 years of age at the time of the most recent administrative hearing. (Dkt. 7, Tr. at 113). In denying plaintiff's claims, the ALJ considered a mental impairment as a possible base of disability. (Dkt. 7, Tr. 121). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had never engaged in substantial gainful activity. *Id.* At step two, the ALJ found that the most recent favorable medical decision finding that plaintiff was disabled, or the "comparison point decision" (CPD), was on February 7, 1994. (Dkt. 7, Tr. at 23). Plaintiff was found to have mental retardation, a medically determinable impairment that met Listing 12.05C, at the time of the CPD. *Id.* However, it was found as of August 1, 2002, there had been a decrease in the medical severity of the impairment present at the time of the CPD. *Id.* Plaintiff's current impairments were found to include mild mental retardation, depression, and a marijuana abuse disorder. *Id.* The ALJ found that these impairment were

"severe" within the meaning of the second sequential step. (Dkt. 7, Tr. at 24). At step three, the ALJ found that plaintiff's current impairments, including the substance abuse disorder, met listing 12.05C in the regulations. *Id*. However, the ALJ also found that if plaintiff stopped using marijuana, he would no longer meet listing 12.05C or, alternatively, listings 12.04 or 12.09. (Dkt. 7, Tr. at 25-26). At step four, the ALJ found that, beginning August 1, 2002, if plaintiff stopped his substance abuse, he would have the residual functioning capacity to perform a full range of work at the light and medium exertional levels with the following limitations: routine production and stress; simple job assignments; and occasional contact with the public. (Dkt. 7, Tr. at 26). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 7, Tr. at 29).

B.    Plaintiff's Claims of Error

Plaintiff first argues that the ALJ's decision should be reversed because the ALJ cited and applied the five step procedure applicable to initial disability claims, instead of the seven step procedure applicable to re-assessments of disability. Second, plaintiff argues that the ALJ erroneously relied on evidence pertaining to plaintiff's mental capacity after age 22, when the Listing clearly requires evidence of an impaired mental capacity prior to age 22. Third, plaintiff argues that the ALJ's conclusion that plaintiff's marijuana use affected his

depression and therefore, the conclusion he failed to satisfy the Listing in the absence of marijuana abuse is not supported by substantial evidence.

C.     Commissioner's Motion for Summary Judgment

The Commissioner asserts that although the ALJ did not always cite the correct regulations, and the decision is not the model of clarity, the remainder of the ALJ's decision shows that he applied the correct standard used for determining whether a claimant's SSI benefits should be terminated. (Tr. 19-26). For example, the ALJ found that if plaintiff stopped using marijuana, his impairment would not meet or equal a listed impairment. (Tr. 21-22). In addition, the ALJ found that plaintiff had medical improvement on August 1, 2002, as defined at 20 C.F.R. § 416.994(b)(1)(I). (Tr. 19-20). The ALJ further found that plaintiff's medical improvement was related to his ability to do work. (Tr. 20). The ALJ stated that plaintiff continued to have a severe impairment or combination of impairments. (Tr. 20). The ALJ then assessed plaintiff's residual functional capacity and determined that he had no past relevant work. (Tr. 22-24). Finally, the ALJ found that considering plaintiff's vocational profile and past work experience, he was not disabled because he could perform work existing in significant numbers in the national economy. (Tr. 25-26). The Commissioner asserts that while the ALJ decision contained errors with respect to his citations to the controlling standards, plaintiff has failed to identify any reversible error

because it is plain from the decision that the ALJ applied the correct standard for termination of SSI benefits.

Although there are flaws in the ALJ's analysis, the Commissioner asserts that substantial evidence supports his ultimate finding that plaintiff demonstrated medical improvement due to increases in his IQ scores. The ALJ noted that plaintiff was last found disabled on February 7, 1994, but found that there had been a decrease in the severity of his impairment since that date based on more recent IQ test scores. (Tr. 19-20). The ALJ noted that plaintiff met a Listing in February 1994, and had a verbal IQ score of 58, a performance IQ score of 65, and a full-scale IQ score of 58. (Tr. 19). Although the ALJ stated that plaintiff's condition had previously been found to have met Listing 12.05C, the record shows that the state DDS found that he met Listing 112.05C. (Tr. 19, 55). In order to be found disabled under Listing 112.05C, a claimant must have mental retardation characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning and a valid verbal, performance, or full scale IQ score of 59 or less. The ALJ correctly noted that an IQ test performed on June 1, 2002, showed that plaintiff had a verbal IQ score of 73, a full scale score of 73, and a performance score of 77. (Tr. 212). Dr. Jeter, the examining psychologist, noted that the scores placed plaintiff in the borderline range of cognitive functioning with potential observed in the low average range. (Tr. 212).

According to the Commissioner, this improvement in plaintiff's IQ scores demonstrates an improvement in his condition because his more recent scores exceeded 59, meaning that his condition would not meet Listing 112.05C had he been a child or Listing 12.05B, which is the equivalent listing for adults. According to the Commissioner, although the ALJ mistakenly concluded that plaintiff had previously met Listing 12.05C, but experienced improvement as of June 1, 2002, his ultimate conclusion that plaintiff's increased IQ scores demonstrated improvement was well supported.

The Commissioner also asserts that the ALJ reasonably found that plaintiff's mild mental retardation met the criteria for Listing 12.05C, but that if he stopped abusing marijuana, his condition would not meet that listing. (Tr. 20-22). The ALJ found that plaintiff's July 2008 IQ test results showed that he had an IQ in the applicable range and that his substance abuse and dysthymic disorder imposed additional and significant work-related limitations. (Tr. 20). The ALJ therefore found that plaintiff met Listing 12.05C. (Tr. 20). As required by the statute and regulations, the ALJ then assessed whether plaintiff would still be found disabled without his use of drugs. (Tr. 21-26). The ALJ found that if plaintiff abstained from drugs, his only remaining limitations would be due to his mild mental retardation. (Tr. 21). Given this conclusion, according to the Commissioner, plaintiff could not be disabled under the "C" criteria of Listing

12.05 because it requires a claimant to show that he had mental retardation and another physical or mental impairment imposing additional and significant work-related limitations.

The Commissioner asserts that even though there is very little evidence in the record concerning plaintiff's dysthymia, substantial evidence supports the ALJ's conclusion that it would not impose additional and significant work-related limitations if plaintiff abstained from drug use.  (Tr. 21).  Despite the fact that the medical evidence pertaining to plaintiff's dysthymia was sparse and the effect of plaintiff's drug use on his dysthymia was not specifically discussed by the medical sources, according to the Commissioner, plaintiff has failed to demonstrate that the ALJ committed reversible error because on the two occasions when he represented that he had abstained from drug use, he either reported that he was asymptomatic or the medical source did not diagnose an affective disorder. While the ALJ's rationale was not very detailed given the dearth of medical evidence, the ALJ provided a sufficient explanation for his conclusions.  The administrative record contains only three evaluations of plaintiff's mental conditions after he became an adult.  (Tr. 210-14, 237-38, 241-47).  In June 2002, plaintiff presented to Dr. Jeter and reported that he smoked marijuana 12 to 15 days a month and had last used the drug four days previously.  (Tr. 211).  Dr. Jeter found that his affect was in full and appropriate ranges and that although he had

evidence of emotional immaturity and some oppositional defiance and dependance issues, there were no indications of a severe emotional impairment. (Tr. 213). Dr. Jeter opined that plaintiff could not manage his own funds due to substance abuse, but that he was able to be involved in age appropriate activities and behaviors, including work. (Tr. 212). Dr. Jeter diagnosed cannabis dependance and borderline intelligence, but did not diagnose dysthymia or depression. (Tr. 214). Plaintiff presented to Dr. Sandaire for treatment in September 2007 and reported that he had not used drugs in one or two months. (Tr. 237). Although plaintiff reported a number of past chronic complaints, he stated that he was asymptomatic. (Tr. 237). On examination, plaintiff had positive findings, such as below average intelligence, poor insight, sadness, and irritable behavior, but also had a number of normal findings including full orientation, good eye contact, normal speech, intact judgment, and a logical and coherent thought process. (Tr. 238). Plaintiff was also evaluated by Dr. Mills in July 2008, who found that plaintiff had a mood disorder, however plaintiff was evasive regarding his current drug use and there is no information regarding when he last abused marijuana. (Tr. 241-47). Although the medical records are sparse and no medical source discussed the effects of plaintiff's substance abuse on his dysthymic disorder, according to the Commissioner, the ALJ adequately explained his reasonable conclusion that plaintiff's dysthymia would not impose an additional and significant work-related

limitation if he abstained from drugs, based on the reports from Drs. Jeter and Sandaire.  (Tr. 21).

## III.    DISCUSSION

Under standards governing the disability termination, a claimant bears a "continuing burden" to show that he is disabled.  *Mathews v. Eldridge*, 424 U.S. 319, 336 (1976).  The termination standard requires substantial evidence that:  (1) there has been medical improvement in the claimant's impairment(s) (other than medical improvement that is not related to the claimant's ability to work); and (2) the claimant is now able to engage in substantial gainful activity.  42 U.S.C. § 423(f).  The Agency has promulgated regulations setting out a seven-step sequential analysis for terminating SSI benefits based on medical improvement when a claimant has not been performing substantial gainful activity:

> (1) If the recipient is not working, do his impairments meet or equal a listed impairment?  If so, his disability will be continued;
>
> (2) If the recipient's impairments do not meet or equal a listed impairment, has there been any medical improvement in his impairments?  If so, the analysis proceeds to step three; if not, it proceeds to step four;
>
> (3) If there has been medical improvement, is it related to the recipient's ability to do work? If so, the analysis proceeds to step five; if not, it proceeds to step four;
>
> (4) If there is no medical improvement, or if the improvement is unrelated to the recipient's ability to do

work, does one of the exceptions to medical improvement at 20 C.F.R. §§ 416.994(b)(3) or (b)(4) apply?  If none of them apply, disability will continue, if one of the first group applies then proceed to step 5, and if any of the second group applies, disability will be ended;

(5) If medical improvement is related to the ability to do work, are the recipient's impairments severe in combination?  If not, the disability is deemed to have ended; if so, the analysis proceeds to step six;

(6) If the recipient's impairments are severe, the SSA will assess his residual functional capacity and consider whether he can do his past work.  If so, he will be found no longer disabled;

(7) If the recipient cannot do his past work, the SSA will consider whether the recipient can do other work given his residual functional capacity, age, education, and experience.  If so, the disability will be found to have ended.

20 C.F.R. § 416.994.  Under Listing 12.05, the listing for mental retardation for

social security benefits, an individual can qualify under 4 different categories.

(A) Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR

(B)  A valid verbal, performance, or full scale IQ of 59 or less; OR

(C)  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related

limitation of function; OR

(D) A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

> 1.    Marked restriction of activities of daily living; or
> 2.    Marked difficulties in maintain social functioning; or
> 3.    Marked difficulties in maintaining concentration, persistence, or pace; or
> 4.    Repeated episodes of decompensation, each of extended duration.

As an initial matter, the undersigned is unpersuaded by plaintiff's argument, based on In Foster v. Halter, 279 F.3d 348, 354 (6th Cr. 2001), that once a claimant is found to satisfy Listing 12.05, which requires evidence to support an onset of the impairment before age 22, any proof suggesting that he is not mentally retarded *after* age 22 is irrelevant to the satisfaction of the Listing. Essentially, plaintiff argues that once a claimant satisfies Listing 12.05, it can never be re-evaluated. While plaintiff's underlying argument – that one cannot "recover" from mental retardation – has some appeal, defendant correctly points out that "[i]ndividuals who had Mild Mental Retardation earlier in their lives manifested by failure in academic learning tasks may, with appropriate training and opportunities, develop good adaptive skills in other domains and may no longer have the level of impairment required for a diagnosis of Mental Retardation." American Psychiatric Association's Diagnostic and Statistical Manual of Mental

Report and Recommendation
Cross-Motions for Summary Judgment
*Beatty v. Comm'r*; Case No. 10-12034

Disorder p. 47 (4th ed. text rev. 2000).  As set forth in the Listing itself, the analysis is not so simple as plaintiff contends, as demonstrated by plaintiff's range of IQ test results, which no one argues are anomalous or invalid.

There is no dispute that the ALJ cited the incorrect five step test in his decision.  It is equally clear, however, as the Commissioner points out, that the ALJ actually followed the seven step test in his analysis and concluded that, with his current severe impairments, plaintiff satisfied Listing 12.05(C) because he has mental retardation that manifested before age 22, a full scale IQ of 64, along with depression.  (Tr. 19-20); *see also*, *O'Connor v. Astrue*, 2009 WL 3273887 (W.D. N.Y. 2009) (The decision of the ALJ will not necessarily be disturbed when he erroneously uses the five-step test but nonetheless makes the findings required in the seven step "medical improvement" analysis.).  The ALJ concluded that plaintiff was credible, given that consulting examiner Dr. Mills reported that plaintiff appeared to give full effort at testing and the ALJ noted that plaintiff consistently complained of depression over the years.  (Tr. 20).

The ALJ then concluded that if plaintiff stopped his marijuana substance abuse, his impairments would still be "severe" but that he would no longer satisfy Listing 12.05(C) because his dysthymic disorder with depressive symptoms was secondary to marijuana use:

> In 2002, after not using marijuana for five days, Dr. Jeter

> reported that Claimant was "able to be involved in age appropriate activities and behaviors including work," despite his borderline intellectual functioning (Exhibit 10F, page 3). On September 13, 2007, Claimant was asymptomatic, but he had not used marijuana in one to two months and medication was reportedly beneficial (Exhibit 11F, page 5). Upon examination, although he was noted to be irritable, sad, below average intelligence, and exhibited poor insight, his psychiatrist reported that Claimant was well groomed, timely, oriented time four, had good eye contact, had normal speech and intact judgment, as well as logical and coherent thought process. In addition, he denied suicidal or homicidal thoughts. Claimant was also receptive to advice (Exhibit 11F, page 6). Thus, it is determined that when assessing this information in light of the entire evidence of record, that the examinations during abstinence from marijuana revealed that Claimant's dysthymic disorder would not impose an additional and significant work-related limitation of function.

(Tr. 21). The question here is whether the ALJ appropriately followed the test for determining whether drug addiction or alcoholism materially contributed to plaintiff's disability.

Under the Act, a person cannot be considered disabled for disability benefits purposes if drug addiction or alcoholism is a contributing factor material to a disability finding. *Trent v. Astrue*, 2011 WL 841538 (N.D. Ohio 2011). The Regulations provide for the following procedure to determine if drug addiction or alcoholism is material to the determination of disability:

> How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> (I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535 and 416.935.  In other words, if the ALJ completes the

five-step process outlined above and determines that a claimant is disabled with

substance abuse, the ALJ must then proceed to conduct a second five-step analysis in order to determine if the claimant would still be disabled without the substance abuse. *Trent*, at *3, citing, *Underwood v. Comm'r of Social Sec.*, 2010 WL 424970 at *6, *10 (N.D. Ohio 2010). In this case, obviously, the review process would be seven-steps, not five. The claimant has the burden of proving that substance abuse is not a factor material to the determination of disability. *Trent*, at *3, citing, *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). The ALJ, however, retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Underwood v. Comm'r of Soc. Sec.*, 2010 WL 424970 (N.D. Ohio 2010), citing, *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002). "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Underwood*, at *6, citing, *Fastner v. Barnhart*, 324 F.3d 981, 86 (8th Cir. 2003); *see also Brueggeman v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) ("In colloquial terms, on the issue of the materiality of alcoholism, a tie goes to [the claimant].").

An "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006),

citing, *McCain v. Dir., Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.").

In the view of the undersigned, the first problem with the ALJ's analysis was his assumption that marijuana use equals marijuana addiction. The regulation specifically requires that a claimant's "drug addiction or alcoholism" be a contributing factor material to the determination of disability. In this case, there is virtually no medical evidence that plaintiff was a drug addict. Dr. Jeter, a psychologist who evaluated plaintiff on one occasion, diagnosed him with "cannabis dependence." (Tr. 214). The medical basis for Dr. Jeter's conclusion is not clear, however, from his report, other than plaintiff's self-reported marijuana use. In a report dated September 13, 2007, Dr. Sandaire, plaintiff's treating psychiatrist, noted that plaintiff's use of marijuana had reached the level of "abuse" but "not dependency." (Tr. 237). Dr. Sandaire also made no connection in his detailed report and evaluation between plaintiff's chronic depression and his marijuana use. Notably, neither physician offered an opinion regarding whether plaintiff's marijuana use (whether dependent or not) affected his depression. Under these circumstances, the connection between the ALJ's conclusion that

Report and Recommendation
Cross-Motions for Summary Judgment
*Beatty v. Comm'r*; Case No. 10-12034

plaintiff's dysthymia would not have prevented him from working in the absence of his marijuana use and the supporting medical evidence is tenuous, at best.  In the view of the undersigned, this conclusion is not supported by substantial evidence as the ALJ did not specifically identify any medical evidence regarding the actual effect of plaintiff's marijuana use on his depression.  *See e.g.*, *White v. Comm'r of Soc. Sec.*, 302 F.Supp.2d 170, 174 (W.D. N.Y. 2004) (decision reversed where ALJ cited no record evidence to support conclusion regarding the effects of alcoholism on plaintiff's mental impairments); *see also Eltayyeb v. Barnhart*, 2003 WL 22888801 (S.D. N.Y. 2003) (plaintiff's alcohol and marijuana dependence considered a contributing factor material to his disability where there was medical evidence from multiple sources that it exacerbated plaintiff's depression, paranoia, and social isolation).  As pointed out by another court, it is unsurprising that a claimant's mental impairment improved during periods of sobriety, but that does not necessarily mean that a claimant is not disabled but for the substance abuse.  *Kinner v. Comm'r of Soc. Sec.*, 2010 WL 653703,*6 (N.D. N.Y. 2010).  Rather, "the question is not whether Plaintiff was more severely limited when she was engaged in substance abuse, but rather whether she continues to meet the definition of disability during sobriety."  *Id.*; *see also Trent v. Astrue*, 2011 WL 841538 (N.D. Ohio 2011) (The impact of alcohol on a mental condition is beyond the scope of the ALJ's area of expertise and an ALJ may not

assume that depressive symptoms would improve with ongoing treatment and stopping the consumption of alcohol."); *Mathious v. Barnhart*, 490 F.Supp.2d 833, 847 n. 14 (E.D. Mich. 2007) ("The ALJ is not a medical doctor ... and is therefore not qualified to determine whether someone's functional limitations and IQ scores are the product of alcohol or drug usage without some competent evidence or more thorough explanation."). In the view of the undersigned, the ALJ failed to adequately explain his rationale and merely assumed that because plaintiff was likely "better" when not using marijuana, he was also, therefore not disabled. For these reasons, the undersigned concludes that this matter should be remanded so that specific medical opinions regarding the affect of plaintiff's marijuana use on his depression can be obtained.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 2, 2011                    s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

    I certify that on September 2, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Norton J. Cohen, Susan K. DeClerq, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb_____<br>
Judicial Assistant<br>
(810) 341-7850<br>
darlene_chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Beatty v. Comm'r*; Case No. 10-12034